IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CENTER FOR BIOLOGICAL          )
DIVERSITY, et al.,             )
                               )
            Plaintiffs,        )
                               )
      v.                       )          Civil No. 99-287-FR
                               )
ANNE BADGLEY, Regional Director, )        O P I N I O N
U.S. Fish and Wildlife Service; JAMIE )
RAPPAPORT CLARK, Director, U.S. )
Fish and Wildlife Service; BRUCE )
BABBITT, Secretary of the Interior, )
                               )
            Defendants.        )
_____ )

        Daniel J. Rohlf
        Pacific Environmental Advocacy Center
        10015 S.W. Terwilliger Blvd.
        Portland, Oregon   97219

        Matt Kenna
        Kenna & Hickcox, P.C.
        679 E. 2nd Avenue, Suite 11B
        Durango, Colorado   81301

            Attorneys for Plaintiffs

        Michael W. Mosman
        United States Attorney
        Thomas C. Lee
        Assistant United States Attorney

            -and-

Lois J. Schiffer
Assistant Attorney General

Jean E. Williams, Chief
Mark L. Stermitz, Trial Attorney
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 7369
Washington, D.C.  20044-7369

       Attorneys for Defendants

Thomas R. Lundquist
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004-2595

       Attorneys for Amicus Curiae
       American Forest & Paper Association

FRYE, Judge:

The matters before the court are 1) the plaintiffs' motion for summary judgment (#51); and 2) the defendants' motion for summary judgment (#78).

## BACKGROUND

On February 25, 1999, the plaintiffs, Center for Biological Diversity and eighteen other non-profit organizations, filed this action alleging that the defendant Secretary of the Interior, through the United States Fish & Wildlife Service, has violated the Endangered Species Act, 16 U.S.C. §§ 1531-1544, by making an erroneous and arbitrary and capricious finding that listing the northern goshawk in the contiguous United States west of the 100th meridian as a threatened or endangered species is not warranted.  The plaintiffs seek an order 1) declaring that the defendants violated the Endangered Species Act; and 2) remanding the issue to the Secretary of the Interior to determine whether the best scientific and commercial data available indicate that listing the northern goshawk in the United States west of the 100th meridian as an endangered or threatened species is warranted.

## FACTS

The northern goshawk is a bird of prey that lives in forested areas of higher latitudes in the

northern hemisphere, including North America (hereinafter referred to as "the goshawk"). The goshawk has been considered an "indicator species," reflecting the overall health of the ecosystems in which it lives. 57 Fed. Reg. 545 (January 7, 1992).

On July 19, 1991, the United States Fish & Wildlife Service (U.S. Fish & Wildlife Service) received a petition from the plaintiffs seeking to list the goshawk as an endangered species in the four southwestern corner states of Utah, Colorado, New Mexico, and Arizona, pursuant to the Endangered Species Act. On September 26, 1991, the plaintiffs submitted a letter to the U.S. Fish & Wildlife Service requesting that the geographic scope of the petition be expanded from the four southwestern corner states of the United States to the entire forested area of the United States west of the 100th meridian. Because the request to amend the previous petition required consideration of a listing action substantially broader in scope than the original petition, the U.S. Fish & Wildlife Service informed the plaintiffs that their request for an amendment would be considered a new petition.

On January 7, 1992, the U.S. Fish & Wildlife Service published a finding that the July, 1991 petition did not present substantial information to indicate that the goshawk constituted a listable entity in the petitioned region. However, the U.S. Fish & Wildlife Service concluded that the decline of the goshawk population and the loss or modification of its habitat may be occurring. This finding caused the U.S. Fish & Wildlife Service to initiate a status review for the goshawk.

On June 25, 1992, the U.S. Fish & Wildlife Service published a 90-day finding that the July, 1991 petition failed to present substantial information to indicate that the goshawk in the western United States was a listable entity. The U.S. Fish & Wildlife Service concluded that the petition failed to establish that the goshawk population west of the 100th meridian constituted a population that was distinctive from the goshawks east of the 100th meridian.

///

As a result, the U.S. Fish & Wildlife Service concluded that the goshawk population west of the

100th meridian did not constitute a listable entity.

The plaintiffs filed an action in the federal district court court seeking to set aside this finding. On February 22, 1996, United States District Judge Richard M. Bilby of the District of Arizona found that there was no clear and consistent policy in the U.S. Fish & Wildlife Service regarding the definition of a distinct population segment and that the U.S. Fish & Wildlife Service arbitrarily demanded concrete proof of genetic differentiation with the goshawk in contrast to a contrary course of conduct in other cases. The district court found that the negative 90-day finding of the U.S. Fish & Wildlife Service on the petition to list the goshawk west of the 100th meridian was arbitrary, capricious and unlawful and remanded the case to the U.S. Fish & Wildlife Service for a new determination. Southwest Center for Biological Diversity v. Babbitt, 926 F.Supp. 920 (D. Ariz. 1996).

On June 6, 1996, the U.S. Fish & Wildlife Service published a new 90-day finding that the petition to list the goshawk in the western United States had not presented substantial information that the petitioned action may be warranted. The U.S. Fish & Wildlife Service determined that the petition included more than one subspecies of the goshawk and therefore did not meet the definition of a distinct population segment eligible for listing under the Endangered Species Act.

The plaintiffs filed an action in the federal district court seeking to set aside this negative 90-day finding by the U.S. Fish & Wildlife Service. On June 6, 1997, United States District Judge Richard M. Bilby of the District of Arizona found that the U.S. Fish & Wildlife Service acted arbitrarily and capriciously in enforcing its final policy of "only one subspecies" and in rejecting the petition without allowing the plaintiffs the opportunity to conform with the "only one subspecies" rule. The district court ordered the petition remanded to the U.S. Fish & Wildlife Service for a new 90-day finding. Southwest Center for Biological Diversity v. Babbitt, 980 F.Supp. 1080 (D. Ariz. 1997).

On September 29, 1997, the U.S. Fish & Wildlife Service issued a new 90-day finding

that the petition provided substantial information indicating that the listing of the goshawk as threatened or endangered in the contiguous United States west of the 100th meridian may be warranted. The U.S. Fish & Wildlife Service initiated a status review of the goshawk in order to determine whether this population warranted listing pursuant to the Endangered Species Act.

The U.S. Fish & Wildlife Service assembled a team of nine wildlife biologists to conduct the status review. Five team members were employed by the U.S. Fish & Wildlife Service, one by the Oregon Department of Fish & Wildlife, one by the Arizona Fish and Game Department, and two by the U.S. Forest Service. Three team members - Susan MacVean, Richard Reynolds, and Brian Woodbridge - had special expertise in goshawks, having authored a total of 27 scientific publications on goshawk biology.

The status review team conducted a review of published scientific literature on the goshawk, supplemented by unpublished materials.

The status review team identified the status review area as all of the forested lands in the United States west of the 100th meridian, which includes about 222 million acres of land in 17 states - 80% of which is federal land, and 55% of which is managed by the U.S. Forest Service. The status review team sent requests for information on goshawks to 821 land managers and scientists at 662 federal offices, 38 state agencies, 35 timber companies, 57 Indian tribes, and 26 other organizations. These requests sought data on goshawk locations, habitat, management plans, and regulation of forests and wildlife.

Many of those who received the requests for information on goshawks did not respond or provided data that was not useable. Ninety-one replies contained data on known goshawk locations. Combining this data with data from "natural heritage databases," the status review team estimated that there were 2,916 reported goshawk territories in the status review area. ER 8793. The status review team concluded that this number probably underestimated the actual number of goshawk territories, because managers of many areas that likely support goshawks did not provide data and because most forested areas had not been surveyed for goshawks. ER

8967.  The number of recorded goshawk territories had increased dramatically in the previous ten years, but the status review team attributed this increase to increased survey efforts rather than an increase in population.  The status review team concluded that the goshawk population was well-distributed, and that there was no evidence that its range in the West had significantly contracted.

The status review team reviewed the literature on the habitat preferences of goshawks.  It concluded that goshawks nest in a variety of forest types, and that goshawks favor mature forests for nesting but may also be found nesting in young forests, tall willows, and riparian cottonwood stands.  ER 8828.  The status review team found some evidence that goshawks prefer to forage in mature forests, but it also found that there was evidence that goshawks forage in openings, edge habitats, steppes, and sagebrush.

The status review team found that the timber harvest reports of the U.S. Forest Service showed a declining trend in the annual number of acres logged on national forests across the West during the past decade.  For most of the status review area, the reports showed an even greater decline in acreage subjected to "heavy cut" harvest methods, such as clear cutting, compared with "light cut" harvest methods, such as selective harvest.  "Light cut" accounted for most of the acres harvested over the ten previous years.  ER 9021.  The status review team concluded that stands that were "light cut" would continue to provide goshawk foraging habitat and would provide nesting habitat one to two decades after harvest.  ER 9014.  The status review team found that most of the forested lands in western national forests - about 90 million acres - are not classified as "suitable for timber" and would not be harvested unless current forest plans are amended.  ER 9015.  The status review team concluded that there is probably less suitable goshawk habitat now than prior to European settlement of the western states, but the status review team concluded that the data was insufficient to show whether there is a trend of continuing decline in goshawk habitat.

Before completing its report, the status review team sought comments from outside

reviewers. The status review team sent portions of the draft report to 99 state, tribal and federal agencies, as well as biologists, requesting comments on the methods and analysis of the data on forest trends and goshawk territories in the status review. The status review team revised the draft and sent it with a request for review and comments to 13 biologists with expertise in goshawks or the analytical methods.

After revising the draft in light of the comments of the reviewers, the status review team completed its report entitled "Northern Goshawk Status Review." ER 8782-9051. The report of the status review team concluded that it was not possible to determine a trend in goshawk population because there was insufficient long-term population trend data from across the review area. The status review team report concluded that it was not possible to determine whether the goshawk population numbers in the review area are stable, increasing or decreasing, but the report concluded that the distribution of breeding goshawks in the West did not appear to have changed from the historical range. ER 9001.

On June 22, 1998, the Regional Director, Region 1, of the U.S. Fish & Wildlife Service prepared the "Twelve-month Administrative finding on Petition to List the Northern Goshawk in the Contiguous Western United States under the Endangered species Act." ER 9052-200. The Regional Director found that listing the population as endangered or threatened was "not warranted." ER 9177. The Regional Director found no evidence of a declining population trend for goshawks, and found that the available information did "not indicate that this population is in danger of extinction or likely to become so in the foreseeable future." Id. The Regional Director stated that the Service had found no evidence to support the petitioners' claim that the goshawk is dependent on large, unbroken tracts of "old-growth" and mature forest, and "no documented evidence that a significant curtailment of the species' habitat or range is occurring." Id. Notice of the Regional Director's approval of this finding was published on June 29, 1998. 63 Fed. Reg. 35183.

On July 13, 1998, the plaintiffs served the U.S. Fish & Wildlife Service with a sixty-day

notice of intent to sue over the "not warranted" finding pursuant to 16 U.S.C. § 1540(g)(2)(C). This action was filed.

## CONTENTIONS OF THE PLAINTIFFS

The plaintiffs contend that the administrative record does not support the conclusion of the U.S. Fish & Wildlife Service that the goshawk appears to be a forest generalist. The plaintiffs contend that the decision not to list the goshawk is arbitrary and capricious because 1) it represents an unexplained reversal of a previous conclusion by the U.S. Fish & Wildlife Service that goshawks require large areas of old-growth for habitat needs; and 2) the conclusion of the U.S. Fish & Wildlife Service that goshawks need little old-growth is not supported and is flatly contradicted by the administrative record.

The plaintiffs contend that the administrative record does not support the conclusion of the U.S. Fish & Wildlife Service that it "did not find evidence of a declining population trend for goshawks." ER 9177. The plaintiffs contend that this conclusion ignores the fact that the agency found that the goshawk habitat and population had declined from its historic levels in all areas analyzed. In addition, the plaintiffs contend that the U.S. Fish & Wildlife Service applied an improper legal standard to its listing decision emphasizing what the agency did not know about goshawks rather than what it did know about goshawks. The plaintiffs contend that the U.S. Fish & Wildlife Service improperly relied upon uncertain, future protections for goshawks.

Finally, the plaintiffs contend that the listing process contains significant procedural flaws which render the listing decision arbitrary. The plaintiffs contend 1) that the U.S. Fish & Wildlife Service violated its own policy by allowing persons who are not U.S. Fish & Wildlife Service personnel to participate directly in the listing decision; 2) that the U.S. Fish & Wildlife Service made the listing decision prior to completing its own scientific analysis; 3) that the U.S. Fish & Wildlife Service failed to decide on a biological standard; and 4) that the peer review utilized by the U.S. Fish & Wildlife Service was largely useless.

## CONTENTIONS OF DEFENDANTS

Defendant U.S. Fish & Wildlife Service contends that the analyses and conclusions of the status review team are sound; that the record overwhelmingly supports the conclusion that the goshawk is a forest habitat generalist; and that it was entirely reasonable for its director to draw a conclusion in 1998 about the habitat preference of the goshawk which is different from a conclusion set forth in a 1992 letter by a subordinate official.

The U.S. Fish & Wildlife Service further contends that the record supports its conclusion that there is insufficient evidence to show a continuing decline in goshawk habitat in the west as well as its conclusion that there is insufficient information to determine whether the goshawk populations are increasing, decreasing or stable.

The U.S. Fish & Wildlife Service contends that the status review team appropriately considered federal management plans in assessing the future of goshawk habitat.

Finally, the U.S. Fish & Wildlife Service contends that no meaningful procedural defect exists in that 1) the use of U.S. Forest Service personnel and biological analyses was entirely appropriate, and the status review was not compromised by using portions of reports by U.S. Forest Service personnel; 2) the final decision was not made until the Director of the U.S. Fish & Wildlife Service signed the decision document; 3) the U.S. Fish & Wildlife Service was not required to construct a definition of a "threatened" species beyond that expressly provided in the Endangered Species Act; and 4) the peer review process was satisfactory and soundly consigned to the discretion of the U.S. Fish & Wildlife Service.

///

## APPLICABLE LAW

Section 4 of the Endangered Species Act authorizes the Secretary of the Interior to make determinations on the status of various species. A non-insect species is "endangered" if the appropriate Secretary determines that the species is "in danger of extinction throughout all or a significant portion of its range[.]" 16 U.S.C. § 1532(6). A species is "threatened" if the appropriate Secretary determines that the species "is likely to become an endangered species

within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

Any interested person may petition to list a species as threatened or endangered. 16 U.S.C. § 1533(b)(3)(A). If the Secretary finds that the petitioned action may be warranted, the Secretary commences a status review of the species and, within 12 months of receiving the petition, must make a finding that (1) the listing is or is not warranted, or (2) at the present time the listing is warranted but precluded. 16 U.S.C. § 1533(b)(3)(B).

The Endangered Species Act requires the Secretary to determine whether any species is threatened or endangered "because of any" of the following five factors: (1) the present or threatened destruction, modification, or curtailment of its habitat or range; (2) over-utilization for commercial, recreational, scientific, or educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory mechanisms; or (5) other natural or manmade factors affecting its continued existence. 16 U.S.C. § 1533(a)(1).

In making a determination as to the status of a species, the Secretary must make the decision:

> solely on the basis of the best scientific and commercial data available to [the Secretary] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation . . . to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas.

16 U.S.C. § 1533(b)(1)(A).

The actions of the Secretary are reviewed in accordance with the Administrative Procedures Act, 5 U.S.C. § 706. Administrative decisions must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency." O'Keeffe's, Inc. v. United States

Consumer Prod. Safety Comm'n, 92 F.3d 940, 942 (9th Cir. 1996) (citing Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 376 (1989)).  Nevertheless, the reviewing court must undertake a "thorough, probing, in-depth review" of the agency's decision.  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971)).

## ANALYSIS

1. The Goshawk is a "Forest Generalist"

    A. Background

Because of concerns over the effects of timber harvesting, the goshawk was listed as a "sensitive species" by the Southwestern Region of the Forest Service, U.S. Department of Agriculture, in 1982.  In the fall of 1990, the Northern Goshawk Scientific Committee was established by the Regional Forester of the Southwestern Region of the U.S. Forest Service to develop a credible management strategy to conserve the goshawk in the southwestern United States.  ER 6901.

In August, 1992, the U.S. Forest Service released a report entitled "Management Recommendations for the Northern Goshawk in the Southwestern United States."  ER 6895-990.  The report concluded that "[t]he goshawk is a forest habitat generalist that uses a variety of forest types, forest ages, structure conditions, and successional stages."  ER 6901.  The report further concluded that "little is known about the structural and composition of habitats used by foraging goshawks."  ER 6911.

On August 13, 1992, the Regional Director for the U.S. Fish & Wildlife Service, Region 2, wrote to the U.S. Forest Service setting forth preliminary comments on the "Management Recommendations" of the U.S. Forest Service.  The comments stated, in part, that "[t]he Recommendations are founded on a series of premises which are poorly supported by published data," including "Premise #1:  That little information is available on goshawk habitat, but what exists suggests they are habitat generalists."  ER 201.  The U.S. Fish & Wildlife Regional Director stated:

PAGE 11 - OPINION

A considerable body of literature contradicts the Recommendations' position that goshawk foraging habitat is poorly understood. This literature also contradicts the Recommendations' characterization of the goshawk as a "forest habitat generalist" (page 3).

The Recommendations use flawed reasoning in suggesting (page 4) that, because goshawks may encounter a mosaic of forest types in their home ranges, they use all of those forest types. Most literature indicates that, given a range of forest types, goshawks prefer certain types over others. Fischer (1986) found that goshawks preferred older forest with large trees for both nesting and foraging. That author did not find, as the Recommendations suggest on page 4, that goshawks hunted in a wide range of forest types and conditions. Preferential use of woodlands over openings and edges was also described by Kenward (1982). Relatively high nesting success and density of nesting pairs in large areas of mature forest suggest mature forest is optimum as goshawk habitat (Anonymous 1989, Crocker-Bedford 1990, Patla 1991, Service and AGFD, unpublished data).

The goshawk does occur in forests of a wide variety of tree (and prey) species compositions, and likely encounters a variety of forest structural conditions. However, the evidence strongly associates northern goshawk nesting and foraging habitat with large tracts of mature, often close-canopied forest (Bloom et al. 1985, Fischer 1986, Fowler 1988, Reynolds 1988, Anonymous 1989, Crocker-Bedford 1990, Patla 1991, Ward et al. 1992).

In contrast to the volume of evidence associating goshawks with mature forests, the GSC presents no data suggesting that goshawks need, prefer, or thrive in the mosaic of forest age classes and openings prescribed in their Recommendations. Several authors (e.g., Fischer 1986) noted that the older stands preferred by goshawks often have more open understories than younger stands. Where a mosaic of woodlands and open areas was available, Kenward (1982) reported goshawks preferred woodlands, where the great majority of prey captures took place.

The majority of published evidence suggests that the Recommendations' forest mosaic will be inferior or unsuitable goshawk habitat. . . .

ER 201-02 (emphasis in original).

On September 15, 1992, the members of the Northern Goshawk Scientific Committee

for the U.S. Forest Service wrote to the Regional Director for the U.S. Fish & Wildlife Service

to address the comments received in the letter dated August 13, 1992 concerning the

"Management Recommendations." The Committee responded, in part:

Your statement that there is a "considerable body of literature" on the foraging habitat of goshawks and that goshawk foraging is "associated with large tracts of mature, dense-canopied forest" is simply not supported by fact. As noted in the "Recommendations," only a few radio-telemetry studies of goshawks have been

completed--four in North America, all of which at this time are unpublished (Fischer, unpubl. Ph.D. Thesis, BYU, 1986; Kennedy, Unpubl. Rep. to USDA Forest Service, 1989; Austin, unpubl. rep., Oregon State University; Hargis, et al., unpubl. rep., Utah State University), and two in Europe . . . .

. . . .

Empirical evidence of northern goshawks successfully nesting in large areas of homogenous forest conditions (e.g., in young, intensively managed ponderosa pine forests), acquired through many years of goshawk research by members of the Committee, also demonstrated that goshawks can be successful in managed forests. In addition, goshawks in the Independence Mountains of Nevada nest in small patches of quaking aspen and forage in vast expanses of mountain shrubland (Yount, unpubl. rpt. 1991, Boise State University), and Alaskan goshawks have been found nesting in narrow willow habitat along the Colville River that is surrounded by open tundra (Swem, Raptor Res. 26:102, 1992). Because of the above, and because the goshawk occurs in all coniferous and many deciduous forest types within their range, the Committee considered the goshawk a "foraging habitat generalist."

Nevertheless, the limited radio-telemetry data suggests that goshawks preferentially use mature forests when present. In an analysis of gos-hawk foraging behavior and hunting tactics (see Literature Cited in "Recommendations"), the Committee concluded that forests with mature trees and relatively open understories offered superior foraging opportunities for goshawks. This finding was also supported by the Committee's review of the literature on the habitat and foods of selected species of goshawk prey; older forest[s] with large trees (in combination with several associated elements including snags and small openings), are more likely to have abundant populations of goshawk prey. For these reasons, we recommended that 60 percent of goshawk home ranges be in the mid-aged, mature, and old forest age-classes (80 to 240+ years of age). As described in the "Recommendations", the remaining 40 percent of home ranges is recommended to be in scattered, small patches of younger forests that are scheduled to replace the older forests.

ER 10641-42 (emphasis in original).

In June, 1998, the "Northern Goshawk Status Review" was prepared for the U.S. Fish & Wildlife Service by the members of the status review team. ER 8782-9051. The status review team included Richard Reynolds, a U.S. Forest Service, Rocky Mountain Research Station employee, and a principal author of the 1992 "Management Recommendations." The U.S. Forest Service manages 55% of the forested land in the status review area. ER 8787.

On June 22, 1998, the Regional Director, Region 1, of the U.S. Fish & Wildlife Service issued the "Twelve-month Administrative finding" concluding that listing the population as

endangered or threatened was "not warranted." ER 9052-200. The section of the "Twelve-month Administrative finding" entitled "Habitat Destruction and Modification" stated, in part:

> In conclusion, the Service believes that forest management (e.g., logging, fire exclusion) has profoundly changed the vegetation characteristics throughout most of the western United States. The Service further agrees that some areas that have been intensively logged may lack nesting goshawks, or support goshawks in densities below probable historical levels. However, there is no documented evidence of extirpations in assessment areas, that goshawk habitat is limiting the overall health of the goshawk population within the petitioned area, or that a significant curtailment of the species' habitat or range is occurring. The petitioners rely largely on the claim that goshawks are dependent on large, unbroken tracts of "old-growth" and mature forest in their assertion that the species is in danger of extinction. However, neither the petition nor other information available to the Service supports this claim. Rather, the species appears to be a forest habitat generalist in terms of the variety and ages of forest types it will use to meet its life history requirements; goshawks use small patches of mature habitat to meet its nesting requirements within a mosaic of habitats in different age classes.

ER 9162. The final section entitled "Findings" stated, in part:

> The information presented in the petition relies largely on a contention that the northern goshawk is dependent on large, unbroken tracts of "old-growth" and mature forest. However, neither the petition nor other information available to the Service supports this claim. The Service found that while goshawks frequently use stands of old-growth and mature forest as an important component of its nesting habitat, overall the species appears to be a forest habitat generalist in terms of the variety and ages of forest types it uses to meet its life history requirements; goshawks use patches of mature

> habitat to meet nesting requirements within a mosaic of habitats in different age classes.

ER 9177.

Both the "Northern Goshawk Status Review" and the "Twelve-month Administrative finding" include substantial parts of the following articles written by U.S. Forest Service biologists: 1) Douglas G. Leslie, "Population Ecology of the Northern Goshawk," 1998 (ER 5963); 2) John R. Squires, "Ecology of the Northern Goshawk," 1997 (ER 7462); and 3) Richard Reynolds, et al., "A Procedure for Identifying and Synthesizing Knowledge for Northern Goshawk Conservation Strategies," 1998 (Declaration of Patrick Burson, p.2).

      B.        Contentions of the Parties

The plaintiffs contend that the extent to which the goshawk depends upon old- growth forest habitat is a key consideration in the listing decision. The plaintiffs explain:

> A determination that goshawks require large areas of old growth to meet their needs throughout their life cycle would tend to support ESA listing for goshawks since ample evidence exists that old growth forests are both less abundant and substantially more fragmented than compared to historic forest conditions. On the other hand, evidence that goshawks merely require small patches of old growth for nesting and are able to use a wide variety of forest conditions for foraging for food and other needs would cut against a decision to protect goshawks and their habitat under the ESA.

Amended Memorandum in Support of Plaintiffs' Motion for Summary Judgment, p. 6.

The plaintiffs contend that the finding by the U.S. Fish & Wildlife Service that the goshawk is a "forest habitat generalist" in the "Twelve-month Administrative finding" is arbitrary and capricious because the agency made no effort to explain why this view of the structure and composition of goshawk habitat changed so dramatically from the position set forth in the 1992 comments by the Regional Director, Region 2, regarding the U.S. Forest Service "Management Recommendations." The plaintiffs contend that this change of view is only explained by the fact that the negative listing decision is copied in substantial part from the U.S. Forest Service "Management Recommendations" casting serious doubt as to whether the U.S. Fish & Wildlife Service actually performed its own arms-length scientific assessment of the habitat needs of the goshawk.

The plaintiffs contend that the U.S. Fish & Wildlife Service cites no scientific studies to support its conclusion in the negative listing decision that goshawks are "forest habitat generalists," and that the record provides voluminous evidence that goshawks need significant areas of mature forests for nesting and foraging. The plaintiffs rely upon the scientific literature cited by the Regional Director of the U.S. Fish & Wildlife Service in the 1992 comments to the U.S. Forest Service "Management Recommendations."

In addition, the plaintiffs rely upon other citations to scientific documents in the administrative record which support the conclusion that goshawks need significant areas

of mature forest for both nesting and foraging, for example, ER 4145 ("[T]he [Arizona Game and Fish] Department considers the goshawk a 'forest habitat specialist' that is strongly associated with mature, dense forest structure in many forest types."); ER 5379-80 ("Northern goshawks have also demonstrated a propensity for higher canopy closure . . . ."); ER 5001 ("Goshawks appear to select mature complex forest . . . ."); ER 2886 ("[N]orthern goshawks appear to require relatively open, old-growth coniferous forests for foraging . . . ."); ER 7406 ("The results of studies by Kennedy (1989), Austin (1991), and Bright-Smith and Mannan (1994) indicate that goshawks depend on forests with a high canopy cover for foraging.").

The U.S. Fish & Wildlife Service contends that the plaintiffs misstate the 1992 comments by the Regional Director, Region 2, to the U.S. Forest Service "Management Recom-mendations." The U.S. Fish & Wildlife Service contends that it was entirely reasonable for the Director of the U.S. Fish & Wildlife Service to draw conclusions in 1998 different from those set forth six years earlier in preliminary comments by a subordinate official.

The U.S. Fish & Wildlife Service contends that there is abundant support in the record, much of which post-dates the 1992 comment letter, for the conclusion of the U.S. Forest Service, and ultimately the U.S. Fish & Wildlife Service, that the goshawk is a forest habitat generalist. The U.S. Fish & Wildlife Service contends that the most compelling evidence is the 1966 review of the U.S. Forest Service "Management Recommendations" by a panel of eminent ornithologists assembled by the Wildlife Society and the American Ornithological Union entitled "Northern Goshawk and Forest Management in the Southwestern United States." ER 9919-42.

The U.S. Fish & Wildlife Service contends that the conclusion by the Wildlife Society that the goshawk is a "forest and prey generalist" (ER 9934) is consistent with a number of other studies in the record, for example, ER 2423 ("Despite selection for dense vegetation structure and large trees, not all used plots [used by northern goshawks for foraging during breeding season] were dense stands of large mature timber . . . ."); ER 5232 ("The degree of diversity among measured attributes characterizing nest stands in the western United States . . . indicates

that goshawks tolerate flexible nesting conditions."); ER 5342 ("Goshawk nesting habitat varied largely due to changes in available habitat."); ER 6215 ("Nesting sites in N. Am. are in almost any kind of forest and are not limited to conifers, as sometimes believed."); ER 7516 ("[D]ata are equivocal regarding mature forest preferences.  Although considered a habit [sic] generalist at large spatial scales, they tend to nest in a relatively narrow range of vegetation structural conditions."); ER 1981 ("[T]he northern goshawk could be called a forest generalist because it is so widespread, and when you consider its entire life history, will live in a wide array of forest cover types and structural conditions.").

        C.     <u>Conclusion</u>

There is controversy in the scientific community over the extent of old-growth or mature forest required by the goshawk for nesting and foraging.  The U.S. Fish & Wildlife Service acknowledges in the negative listing that "[g]oshawk nest habitat is often characterized as mature to old-growth forest composed primarily of relatively large trees with relatively high canopy closure."  ER 9157.  The issue before this court is whether the U.S. Fish and Wildlife Service acted arbitrarily and capriciously in making its finding in the "Twelve-month Administrative finding" that "overall the species appears to be a forest habitat generalist."  ER 9177.  A court reviewing an agency's adjudicative action should accept the agency's factual findings if those findings are supported by substantial evidence in the record as a whole.  <u>Arkansas v. Oklahoma</u>, 503 U.S. 91, 113 (1992).

The comments of the Regional Director, Region 2, of the U.S. Fish & Wildlife Service in the letter of August 13, 1992 stating, in part, that "the evidence strongly associates northern goshawk nesting and foraging habitat with large tracts of mature, often close-canopied forest" (ER 201) does not support the conclusion that the agency acted arbitrarily and capriciously in the negative listing announced by the Director of the U.S. Fish & Wildlife Service on June 29, 1998.  The "Twelve-month Administrative finding" states, in part, that "the species appears to be a forest habitat generalist in terms of the variety and ages of forest types it will use to meet its life history

requirements; goshawks use small patches of mature habitat to meet its nesting requirements within a mosaic of habitats in different age classes." ER 9162.

Between August 13, 1992 and June 29, 1998, the status review team was formed, and the "Northern Goshawk Status Review" report was compiled and published. A number of additional studies were conducted and articles were published, including the articles written by U.S. Forest Service biologists Douglas G. Leslie, John R. Squires, and Richard Reynolds. Since 55% of the petitioned area consists of land managed by the U.S. Forest Service, the U.S. Fish & Wildlife Service was required to consider the recent scientific data compiled by U.S. Forest Service biologists.

The U.S. Fish & Wildlife Service was required by the Endangered Species Act to examine "the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). The U.S. Fish & Wildlife Service remained free to find that the goshawk is a forest generalist as long as this fact is supported by the administrative record as a whole. There are significant studies in the administrative record that support this finding, notably the 1996 report by the Wildlife Society. This panel examined the 1992 U.S. Forest Service "Management Recommendations" and concluded, in part:

> Review of northern goshawk biology and habitat use by the Northern Goshawk Scientific Committee was excellent. No evidence was presented to indicate that northern goshawk populations are declining, threatened or endangered in the Southwest or anywhere within its range, and we found no evidence of a long-term decline in goshawk breeding populations. . . .
>
> . . . .
>
> Northern Goshawks use a variety of forested habitats during the nesting period (Apr-Aug). Throughout its distribution it is considered a forest and prey generalist.

ER 9923, 9934. See also ER 5232, "Characterization of Nesting Habitat of Goshawks (Accipiter gentilis) in Northwestern California" by Patricia A. Hall (1984) ("Goshawks in northwestern California nest in old-growth Douglas-firs within patches of forest which are older, less dense, and more complex structurally than the surrounding nest stand. . . . The degree

of diversity among measured attributes characterizing nest stands in the western United States, however, indicates that goshawks tolerate flexible nesting conditions."); ER 5342, "Goshawk Nest-Site Characteristics in Western Montana and Northern Idaho" by Gregory D. Hayward and Ronald E. Escano (1989) ("Goshawk nesting habitat varied largely due to changes in available habitat."); and ER 7512, 7517, The Birds of North America by John R. Squires and Richard T. Reynolds (1997) ("Although Goshawks nest in a variety of habitat types--from willow stands along Arctic rivers to massive old-growth forests of the Pacific Northwest--they seem to prefer mature forests with large trees on moderate slopes with open understories. . . . **Foraging habitat.** Hunts in diverse habitats ranging from open-sage steppes to dense forests, including riparian areas.")

There is substantial evidence in the administrative record to support the conclusion of the Director of the U.S. Fish & Wildlife Service that the goshawk is a forest habitat generalist.

2.  Links Between Habitat and Population

The plaintiffs contend that there is no support in the administrative record for the assertion by the U.S. Fish & Wildlife Service that it could not make population trend projections based upon habitat trends. The plaintiffs contend that the conclusion of the status review team that "it is currently difficult to judge the effects of the forest change on goshawk populations" (ER 9001) is directly contrary to the position of the status review team that "trends in habitat equate to probable trends in goshawk populations" (ER 3580). The plaintiffs contend that the administrative record supports the conclusion that goshawk population trend correlates with goshawk habitat trend, and that evidence of documented decline in goshawk habitat in the six assessment areas is significant evidence of goshawk population decline.

Defendant U.S. Fish & Wildlife Service acknowledges that it found that "there is less of the mature forest that goshawks prefer for nesting than existed prior to European settlement of the West," but contends that there is "no evidence in the record showing a continuing trend of goshawk habitat curtailment in the western United States." Defendants' Combined Memorandum

in Support of Their Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, p. 15. The U.S. Fish & Wildlife Service contends that the status review team found little useable data regarding the trend of goshawk habitat, but did find a trend of declining timber harvest on national forests across the west over the past ten years. The status review team concluded that there are a number of areas where implementation of forest plans that are currently in place can reasonably be expected to result in significant increases in goshawk habitat.

The U.S. Fish & Wildlife Service contends that "[t]he most that can be drawn from the record is that there is probably less habitat now than in the past, that there is substantially less logging on federal lands now than in the past, and that current Forest Service management plans indicate continued protection of goshawk habitat." Id. at 18. The U.S. Fish & Wildlife Service contends that it reasonably concluded that the record does not support a conclusion that there is an ongoing trend of decline in goshawk habitat in the west.

The Endangered Species Act requires the Secretary to determine whether any species is threatened or endangered because of the present or threatened destruction, modification or curtailment of its habitat or range. 16 U.S.C. § 1533(a)(1). In June, 1998, the Regional Director of Region 1 issued the "Twelve-month Administrative finding," which was adopted by the Director. This finding reviews in detail the present or threatened destruction, modification or curtailment of goshawk habitat or range. ER 9125-62. The Regional Director states in the introduction to this section of the findings:

> The Service agrees that general population biology theories indicate there should be a relationship between change in forest habitat and a change in goshawk population. However, there is no documentation in research that demonstrates the nature of this presumed relationship across the entire petitioned area. Some studies reported local areas where a correlation between habitat abundance and goshawk populations was found (Desimone 1997; Crocker-Bedford 1990). These localized studies lend support to this general assumption, despite the lack of documentation for the petitioned area as a whole.
>
> Because of the lack of documentation of a relationship between habitat and goshawk populations for the petitioned area, and because the species

is known to use a variety of forest types and to be dependent on prey availability, caution is required in drawing conclusions about changes in forest habitat and goshawk population change. While caution is appropriate, it should not be concluded that forest habitat change is irrelevant to the goshawk population situation.

ER 9125.

The Regional Director reviewed the scientific literature, the habitat data collected by the status review team, and the timber harvest data collected from the U.S. Forest Service. The Regional Director stated conclusions regarding goshawk habitat trends in each of the six assessment areas, in part, as follows: Assessment Area 1 ("goshawk habitat has declined") ER 9132; Assessment Area 2 ("with the exception of the ponderosa pine forest type, Assessment Area 2 currently has an abundance of mature and old-growth forests available") ER 9136; Assessment Area 3 ("goshawk habitat in the Southwest should remain relatively stable into the foreseeable future") ER 9140; Assessment Area 4 ("goshawk habitat . . . should improve over time") ER 9147; Assessment Area 5 ("there clearly has been a significant reduction in the amount of habitat often associated with goshawk nest sites) . . . ("the trend toward reduced harvest of mature forests in this assessment area should benefit goshawks over time") ER 9152, 9153; and Assessment Area 6 ("the network of large reserves . . . will improve and sustain goshawk populations in this area") ER 9156.

The Regional Director concluded that "there is no documented evidence of extirpations in assessment areas, that goshawk habitat is limiting the overall health of the goshawk population within the petitioned area, or that a significant curtailment of the species' habitat or range is occurring." ER 9162. The court finds that the administrative record demonstrates that the U.S. Fish & Wildlife Service fully considered the present or threatened destruction, modification or curtailment of the habitat or range of the goshawk. There is substantial evidence in the record to support the conclusion that "there is no documented evidence . . . that goshawk habitat is limiting the overall health of the goshawk population within the petitioned area." Id.

3.    Evidence of a Declining Population Trend

1    In the listing decision made on June 28, 1998, the U.S. Fish & Wildlife Service

2    concluded that listing the goshawk population as endangered or threatened was "not warranted."

3    The U.S. Fish & Wildlife Service stated:

> Based on the best available information, the Service did not find evidence of a
> declining population trend for goshawks.  While the Service did find that forest
> management (e.g., timber harvest and fire suppression) has changed the
> vegetation characteristics throughout much of the western United States, the
> available data indicate[s] that goshawks remain widely distributed throughout the
> western United States.  Approximately 75% of the goshawk territories reported
> to and analyzed by the Service (n=2,729) were discovered in the past 10 years.
> The current distribution approximates the historical distribution of nesting
> goshawks, and there is no evidence of any significant areas of extirpation.  The
> Service finds no documented evidence that a significant curtailment of the
> species' habitat or range is occurring.

10   ER 9177.

11   The plaintiffs contend that the conclusion of the U.S. Fish & Wildlife Service that "[t]he

12   current distribution approximates the historical distribution of nesting goshawks" is based upon a

13   largely nonexistent analysis.  ER 9177.  The plaintiffs contend that the U.S. Fish & Wildlife

14   Service had virtually no data upon which to base its comparison of the goshawks' current and

15   historic distribution, much less conclude that these distributions are roughly the same.

16   The plaintiffs contend that the administrative record contains huge amounts of data that

17   either do not support or directly contradict the finding by the U.S. Forest Service that "the

18   Service did not find evidence of a declining population trend for goshawks."  Id.

19   The U.S. Fish & Wildlife Service contends that the status review team reviewed a vast

20   compilation of published and unpublished literature on goshawks, and that the plaintiffs have cited

21   nothing in that literature showing that the range of the goshawk in the west was significantly

22   broader in the past than it is now.  The U.S. Fish & Wildlife Service contends that much of the

23   literature supports the conclusion of the agency that the breeding distribution of goshawks

24   appears not to have changed significantly.

25   The U.S. Fish & Wildlife Service contends that the Endangered Species Act does not

26   require the agency to determine the population size of a species before it makes a listing decision

or to have conclusive evidence to make its listing decision.  The agency contends that the record

supports its conclusion that there is insufficient evidence to show a declining population trend for

the goshawk in the petitioned area.  The agency contends that available data does not support a

conclusion that the goshawk population in the western United States is in danger of extinction or

likely to become so in the foreseeable future.

The Regional Director concluded in the "Twelve-month Administrative finding" that "the

Service did not find evidence of a declining population trend."  ER 9177.  The relevant inquiry for

the district court is whether the agency "'considered the relevant factors and articulated a rational

connection between the facts found and the choice made.'"  <u>Friends of Endangered Species, Inc.</u>

<u>v. Jantzen</u>, 760 F.2d 976, 982 (9th Cir. 1985) (quoting <u>Baltimore Gas & Elec. Co. v. Natural</u>

<u>Res. Def. Council, Inc.</u>, 462 U.S. 87, 105 (1983)).  An agency's decision is arbitrary and

capricious if it:

> "has relied on factors which Congress has not intended it to consider, entirely
> failed to consider an important aspect of the problem, offered an explanation for
> its decision that runs counter to the evidence before the agency, or is so
> implausible that it could not be ascribed to a difference in view or the product of
> agency expertise."

<u>O'Keeffe's, Inc.</u>, <u>supra</u>, 92 F.3d at 942 (quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut.</u>
<u>Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)).

A reviewing court:

> must consider whether the decision was based on a consideration of the relevant
> factors and whether there has been a clear error of judgment. . . .  Although this
> inquiry into the facts is to be searching and careful, the ultimate standard of
> review is a narrow one.  The court is not empowered to substitute its judgment
> for that of the agency.

<u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971) (citations omitted).

In fulfilling its duty, the agency shall "make any determination . . . solely on the basis of

the best available scientific and commercial information regarding a species' status, without

reference to possible economic or other impacts of such determination."  50 C.F.R. § 424.11(b).

The status review team sent its request for data on goshawk territory to 821 federal, state, tribal

and private land managers.  ER 8788.  The status review team then analyzed the submitted data and reported its conclusions regarding goshawk habitat trends in each of the six assessment areas.  ER 8880, 8891, 8903, 8926, 8944 and 8960.  In addition, the status review team reviewed a vast compilation of published and unpublished literature on goshawks.  ER 8785, 9022-51.

As required by 16 U.S.C. § 1533(a)(1), the "Northern Goshawk Status Review" and the "Twelve-month Administrative finding" discuss in detail the information collected and thereafter set forth conclusions as to whether the goshawk is threatened or endangered "because of any" of the following five factors:  (1) the present or threatened destruction, modification or curtailment of its habitat or range - ER 9000-01, 9157-62; (2) over-utilization for commercial, recreational, scientific or educational purposes - ER 9001, 9162; (3) disease or predation - ER 9001-02, 9165; (4) the inadequacy of existing regulatory mechanisms - ER 9002-04, 9166-76; and (5) other natural or manmade factors affecting its continued existence - ER 9004, 9176.

The Northern Goshawk Status Review analyzed the data collected on the historic distribution of goshawks stating, in part:

> Maps of all reported territories (presented as figures earlier in Chapter 3) show goshawks well-distributed within the forested habitat of each Assessment Area. Any interpretation of the distribution should consider that some of these locations have not been confirmed in the past ten years (approximately 13%).  If all of the "old" territories (those not documented in the past 10 years) were concentrated in a portion of the geographic area, we would have indications of the goshawk being eliminated from a portion of its range.  Our analysis of the "old" territory shows [sic]

> Thus, we found no evidence or reports of goshawks being eliminated from a large landscape which could be interpreted as contraction of the species range. There are localized reports of goshawks being disappearing [sic] from individual territories, but the general distribution appears to be correlated with the forested west.  The exception to this statement are [sic] the portions of the forested west where goshawks have not been reported in abundance either in the past or recently (coastal northern California, Oregon, and Washington and southern California).  The discussions of Assessment Areas 5 and 6 address these situations.

> Comparing the estimated current distribution against a historic distribution is difficult because of the lack of data on historic populations and habitat.

However, we can draw some general conclusions about the historic distribution of forested habitat in the west. Few areas of forest have been permanently changed from forested habitat; notable areas are the Puget Trough in Washington and the Willamette Valley of Oregon. In these areas we would not expect to find appreciable numbers of goshawks today. We also have indications of increased acreage of forest in portions of the west, principally from the expansion of pinyon-juniper forests in the absence of fire. But in general, looking at the scale of the Review Area, we believe the current distribution of forested habitat (Figure 3.1) approximates the historic distribution of potential goshawk habitat.

Based on our analysis of the subset of 2,729 reported territories, we conclude that the distribution of goshawks shown in the series of Assessment Area maps [ER 8882, 8893, 8907, 8931, 8952, 8965] represents a good sample of the near recent and current goshawk distribution. We further conclude that the current distribution of known territories probably approximates the likely historical distribution of nesting goshawks.

ER 8969-70.

The status review team generated two maps of the petitioned area based upon the data collected. The first map depicts goshawk territories known to be occupied prior to 1988, and the second map depicts territories known to be occupied after 1988. ER 10413, 10414. Comparing these two maps demonstrates that breeding goshawks have continued to occupy all regions that they were known to occupy prior to 1988. The limitations of this analysis are acknowledged by the status review team. The status review report states, for example, that "[c]omparing the estimated current distribution against a historic distribution is difficult because of the lack of data on historic populations and habitat." ER 8970. The status review team requested information on goshawk territory for the time period of 1970 to the present "because the Review Team felt it was the earliest date that land managers were likely to have maintained reliable wildlife observation records." ER 8790. In fact, the vast majority of the 2,916 goshawk territories that the status review team tallied were recorded after 1990, significantly limiting the use of this data to form conclusions regarding historical trends. ER 10424-88.

Even if accurate information regarding historic territories and current territories were available, there would be some question as to the appropriate conclusion to draw, for example, the comments of Brian Walton of the Predatory Bird Research Group, University of California,

Santa Cruz in a letter to the U.S. Fish & Wildlife Service dated March 2, 1998 explains, in part:

> Clearly, a map of known territories and habitat types occupied by the population does not contain the adequate elements necessary to discuss population status. The huge expense and staggering number of man-hours required by your data request could be much reduced by other means of analyzing status.
>
> [W]ell-informed, long-involved biologists can use existing information on such well-studied, wide-ranging species and make a professional current status analysis. Please, whatever you do, do not utilize the completely irrelevant comparison of the number of "historic" territories to the number of current territories. Regardless of the fact that neither of these two numbers is known; habitat, carrying capacity, and mortality factors have changed.

ER 2366.

While the limitations of the available data regarding the historical distribution of goshawks are noted, there is credible, substantial, scientific literature in the administrative record which supports the conclusion that "the Service did not find evidence of a declining population trend." ER 9177. A study entitled "The Status of the Northern Goshawk in California, 1981-1983" by Peter H. Bloom, Glenn R. Stewart, and Brian J. Walton of the State of California Department of Fish and Game (ER 4537-65) concluded that the "[r]esults of this study indicate that the Northern Goshawk population size in California is relatively stable when compared with past declines of endangered species such as the Bald Eagle and Peregrine Falcon." ER 4557. The July, 1992 report entitled "Status of the Northern Goshawk in Oregon and Washington" prepared for the Audubon Society of Portland by David B. Marshall, a consulting wildlife biologist, states that "[t]here are no data suggesting there are survival problems among goshawks of the Pacific northwest," but concludes that "[b]ecause questions remain on the long range viability of goshawks in Oregon and Washington and elsewhere, further research is needed." ER 292, 272.

In Birds of Prey, Natural History and Conservation of North American Raptors (1991), accipiter experts Noel and Helen Snyder conclude that:

> [t]he overall distribution of the goshawk is large and varied, and provides the species with considerable security from extinction. Nevertheless, some local

populations, such as those in parts of Arizona, have exhibited significant recent declines, possibly resulting in part from accelerated timbering practices. The species deserves continued close monitoring because of its overall sparse population densities.

ER 9991.

In March, 1996, the Wildlife Society issued a technical review entitled "Northern Goshawk and Forest Management in the Southwestern United States" analyzing the scientific basis of the interim management guidelines resulting from the "Management Recommendations" developed by the U.S. Forest Service. ER 9919-42. The report explains that:

> [b]ecause there is evidence that some forestry practices could have detrimental effects on goshawk nesting habitat, the U.S. Forest Service (USFS), state natural resource agencies, and concerned public groups have initiated research on the biology of goshawks and evaluation of forest management practices on goshawks. Most prominently, the USFS developed and initiated implementation of *Management Recommendations For The Northern Goshawk In The Southwestern United States* (Reynolds et al. 1992).

ER 9925. The Wildlife Society concluded that the:

> [r]eview of northern goshawk biology and habitat use by the Northern Goshawk Scientific Committee was excellent. No evidence was presented to indicate that northern goshawk populations are declining, threatened or endangered in the Southwest or anywhere within its range, and we found no evidence of a long-term decline in goshawk breeding populations.

ER 9923.

In the 1997 edition of The Birds of North America published by the Academy of Natural Sciences and the American Ornithologists' Union, John Squires and Richard Reynolds describe the historical changes in goshawk distribution, stating "[f]ew data; western and northern portions of range in North America probably relatively unchanged since settlement by Europeans . . . ." ER 7513.

In 1997, Professor Patricia L. Kennedy of Colorado State University published an article in the Journal of Raptor Research entitled "The Northern Goshawk (Accipiter Gentilis Atricapillus): Is There Evidence of a Population Decline?" Professor Kennedy evaluated the claim that northern goshawk populations are declining in North America based on a review of the

published literature and analyses of demographic data collected on two goshawk populations in New Mexico and Utah.  Professor Kennedy explained:

> My goal in this paper is to evaluate the claim that goshawk populations have suffered significant declines in the western U.S.  I address the following question:  Is there demographic evidence that goshawk populations are declining?  The mark of a species in trouble is not its population abundance or geographic range size at one point in time, but the rate of population decline or range contraction . . . .

ER 5886.

Professor Kennedy reviewed the significant studies addressing this question, many of which are a part of the administrative record in this case and some of which the plaintiffs rely upon to support their position that there is evidence in the administrative record that goshawk populations are declining or likely to decline in the future, for example, "Goshawk Reproduction and Forest Management" by D. Coleman Crocker-Bedford published in the <u>Wildlife Society Bulletin</u> in 1990, ER 4702.  Professor Kennedy writes:

> Crocker-Bedford (1990) was the first person to suggest in the scientific literature that goshawk populations were declining due to overharvest of their forested habitat.  This idea is important and it needed to be published.  However, his study does not do an adequate job of rigorously evaluating this hypothesis. . . . Although his data suggest[s] more nest structures can be found in lightly harvested areas as compared to heavily harvested areas, his inference from this dataset to estimating rate of population change is unwarranted.  The relationship between number of nest structures and number of goshawk breeding territories is unknown and the assumption that spatial variation in nest structure density reflects temporal variation in nest structure density is not supported by any data and is probably unjustified biologically.

ER 5889.

Professor Kennedy concludes that:

> there is no evidence to support the hypothesis that goshawk populations are declining.  This result can be interpreted in two ways:  (1) goshawk populations are not declining; or (2) goshawk populations are declining but the declines have not been detected with current sampling techniques . . . .

///

It is clear that the information currently available to the agencies concerning

goshawk population trends and demographic parameters is insufficient to diagnose population declines.

ER 5893-94. Professor Kennedy cautions: "Although the concerns about overharvest of forested communities is certainly justifiable, listing a species for which there is no evidence of a population decline would be a misuse of that legislation and could greatly erode the credibility of the ESA." ER 5894.

During the public comment period on the status review, several ornithologists wrote and expressed the view that the goshawk does not warrant listing under the Endangered Species Act. ER 2367 ("The suggestion that timber practices are endangering goshawks is logical only with a complete lack of understanding of the species."); ER 9907 ("The conclusion from my cumulative observations and my knowledge of the literature . . . is that the northern goshawk . . . does not fit the criteria for, nor definition of, an endangered species . . . 'likely within the foreseeable future . . . to become threatened with extinction.'"); ER 9916 ("While I am sympathetic to efforts to reduce habitat destruction, territorial disturbance, and other human-related impacts due to logging or recreational activities, I do not believe there is any evidence of endangerment. Certainly population size has been altered due to fire suppression, logging, and recreation pressure. However normal mortality and alteration of maximum population size do not signal endangerment.").

The court concludes that there is ample evidence in the administrative record to support the decision of the U.S. Fish & Wildlife Service that "listing the northern goshawk in the contiguous United States west of the 100th meridian is not warranted because available information does not indicate that this population is in danger of extinction or likely to become so in the foreseeable future." ER 9177. The court further concludes that the U.S. Fish & Wildlife Service considered all relevant factors, applied the correct law, and made a reasoned decision supported by the record. While there are references in the administrative record to the need for further research on many aspects of the goshawk, the best available scientific and commercial

information supports the June 28, 1998 decision that listing under the Endangered Species Act is not warranted. See, e.g., ER 272, Marshall (1992) ("Because questions remain on the long range viability of goshawks in Oregon and Washington and elsewhere, further research is needed."); ER 4557, Bloom, Stewart & Walton (1986) ("[D]ue to current and projected levels of habitat destruction caused by timber harvesting activities, we urge that the population be monitored periodically to determine if State listing as Threatened or Endangered may be warranted at some future time."); ER 5894, Kennedy (1997) ("It is clear that the information currently available to the agencies . . . is insufficient to diagnose population declines.  However, I think goshawk population trends could be diagnosed with a meta-analysis of all existing datasets.").

4.    Future Protections

The plaintiffs contend that the U.S. Fish & Wildlife Service improperly relied upon uncertain, future protections for the goshawk, and that the efficacy of these future protections is contradicted by the record.  The plaintiffs explain that the U.S. Fish & Wildlife Service repeatedly refers to 1) future management plans which the agency concludes will provide improved habitat for the goshawk; and 2) current plans which the agency concludes should improve goshawk habitat because they call for reduced federal timber harvest.

The plaintiffs point to the reliance of the U.S. Fish & Wildlife Service on the future adoption by the U.S. Forest Service and the Bureau of Land Management of the Interior Columbia Basin Ecosystem Management Plan to support its conclusion that goshawk habitat in a large portion of the West will improve over time.  The plaintiffs explain that subsequent efforts to revise the process demonstrate that there is considerable doubt as to whether the agencies will ever finalize or implement this plan.

The U.S. Fish & Wildlife Service contends that the status review team was correct in considering present federal and state management plans as a part of its review.  The U.S. Fish & Wildlife Service explains that it is required under the Endangered Species Act to consider

"existing regulatory mechanisms," such as existing forest plans and conservation plans.  16 U.S.C. § 1533(a)(1)(D).

In addition, the U.S. Fish & Wildlife Service contends that the status review team did not rely upon the adoption of the Interior Columbia Basin Ecosystem Management Plan to support its conclusion that goshawk habitat in a large portion of the West will improve over time.  The U.S. Fish & Wildlife Service contends that the status review team stated that "[t]he future trend in goshawk habitat for Forest Service and BLM lands in the [Columbia] Basin will depend upon the alternative selected."  ER 8880.

The Endangered Species Act provides that the U.S. Fish & Wildlife Service may rely only upon "existing regulatory mechanisms" in its listing determinations.  16 U.S.C. § 1533(a)(1)(D).  Courts have specifically and repeatedly interpreted this provision to mean that an agency may not rely upon future actions to justify a decision not to list a species as threatened or endangered.  Oregon Natural Resources Council v. Daley, 6 F.Supp.2d 1139, 1153-54 (D. Or. 1998); Friends of Wild Swan, Inc. v. United States Fish and Wildlife Serv., 945 F. Supp. 1388, 1399 (D. Or. 1996); Biodiversity Legal Found. v. Babbitt, 943 F. Supp. 23, 26 (D. D.C. 1996); Southwest Center for Biological Diversity v. Babbitt, 939 F. Supp. 49, 52 (D. D.C. 1996).

The status review team correctly considered present federal and state management plans as relevant factors and "existing regulatory mechanisms" under 16 U.S.C. § 1533(a)(1)(D).  There is no evidence in this case that the U.S. Fish & Wildlife Service improperly relied upon uncertain, future protections in making the negative listing decision.

5.      Procedural Flaws

A.      Status Review Team

The plaintiffs contend that the U.S. Fish & Wildlife Service violated its own policy by allowing non-U.S. Fish & Wildlife Service personnel to participate directly in the listing decision.  The plaintiffs complain that the U.S. Fish & Wildlife Service took the relatively unusual step of

forming a team of individuals to conduct the status review of the goshawks and took the virtually unprecedented step of including four individuals from outside the U.S. Fish & Wildlife Service on the nine-member team, including two U.S. Forest Service personnel. The plaintiffs contend that this procedural flaw in the agency's decisionmaking process renders the listing decision arbitrary and capricious.

The plaintiffs explain that U.S. Forest Service personnel faced a potential conflict of interest on the status review team. Since the U.S. Forest Service manages 55% of the potential goshawk habitat in the west, and the U.S. Forest Service manages its lands on a multiple use mandate which includes economic considerations and commodity production, listing of the goshawk as threatened or endangered would substantially affect the actions of the U.S. Forest Service. The plaintiffs further explain that other agencies and organizations interested in the outcome of the listing determination could influence the process only through public comments or written correspondence, while members of the U.S. Forest Service status review team were in a position to substantially influence the listing decision.

In addition, the plaintiffs point to the handbook of the U.S. Fish & Wildlife Service governing the agency's listing process which contains a section on participation by non-U.S. Fish & Wildlife personnel. The handbook states:

> Once the public comment period for a proposed rule closes, agency personnel associated with the listing decision are discouraged from engaging in activities or substantive discussions related to the rulemaking with anyone outside the Department. This precludes the admittance into the agency proceedings of new information that may influence the agency or Department decision without the opportunity for public review and comment. Once the comment period closes, any substantive contacts with individuals outside the Department must be documented for the record; any meetings with individuals outside the Department should include a representative from the Solicitor's office.

Exhibit A to Amended Memorandum in Support of Plaintiffs' Motion for Summary Judgment.

The U.S. Fish & Wildlife Service contends that nothing in the Endangered Species Act specifies how the status review is to be carried out or precludes the participation of expert personnel from other agencies in the status review. The U.S. Fish & Wildlife Service contends

that the inclusion of U.S. Forest Service personnel with the requisite expertise on the status review committee was consistent with the Endangered Species Act and reasoned decisionmaking. The U.S. Fish & Wildlife Service explains that using available expertise of other agencies is an appropriate and reasonable method for ensuring that the Secretary's decision will be grounded on the best available scientific information. In addition, the U.S. Fish & Wildlife Service contends that there is no evidence that U.S. Forest Service personnel improperly influenced the status review team and the decision it made.

The U.S. Fish & Wildlife Service further points out that the role of the status review team was to collect information and provide a report and a recommendation. Because the responsibility for the final listing decision rests with the Director of the U.S. Fish & Wildlife Service, and because the Director is not bound by that recommendation, the U.S. Fish & Wildlife Service contends that the final listing decision of the Director cannot be rendered invalid because two of the nine status review team members were U.S. Forest Service personnel.

Finally, the U.S. Fish & Wildlife Service contends that the decisionmaking process recommended in the listing handbook does not alter this conclusion. The U.S. Fish & Wildlife Service explains that the section relied upon by the plaintiffs was aimed at avoiding improper ex parte contacts during the rulemaking process and not at restricting the expertise that the U.S. Fish & Wildlife Service had available to participate in the status review.

The Endangered Species Act does not prohibit the U.S. Fish & Wildlife Service from including personnel from other agencies on the status review team. The U.S. Fish & Wildlife Service has a duty to act reasonably. There is no evidence of improper influence or improper motive in this case. This court has found that the U.S. Fish & Wildlife Service collected the available information, considered all relevant factors, and made a reasoned decision based upon credible, substantial evidence in the record. The participation of personnel from the U.S. Forest Service in the status review team does not render this decision arbitrary or capricious. Since the U.S. Forest Service manages 55% of the forested lands in the status review area, cooperation

between the agencies is required to collect data, perform research, and address future concerns.

B.      Timing of the Decision

The plaintiffs contend that the U.S. Fish & Wildlife Service had decided that the goshawks did not warrant protection under the Endangered Species Act well before it completed its status review report.  The plaintiffs point out that while that the status review report is dated "June 1998" and the agency's final determination on the goshawk petition carries a handwritten date of June 10, 1998, the notes of a meeting of select members of the status review team which took place on April 15, 1998 indicate that Regional Director Michael J. Spear had already reached a conclusion that listing the goshawk was not warranted.  The plaintiffs point out that this conclusion by Spear, that a listing proposal for goshawks was not warranted, preceded completion of much of the analysis and drafting of the sections in the status review report providing conclusions, recommendations and much of the biological analysis.

The U.S. Fish & Wildlife Service contends that the final decision of not warranted was made by the Director of the U.S. Fish & Wildlife Service, Jamie Rappaport-Clark, not the Regional Director Michael J. Spear.  The notice of decision is found at 63 Fed. Reg. 35183, dated June 29, 1998, and it announces a decision of June 22, 1998.  The U.S. Fish & Wildlife Service contends that the meeting between the Regional Director and members

///

of the status review team on April 15, 1998 is factually irrelevant to the notice of decision in the Federal Register.

The planner notes dated April 15, 1998 of Monty Knudsen, administrative leader of the status review team, record that "Mike & others concluded not warranted for much of Atricapillus, still question about Apache, but probably same lack of clear information on status." ER 3638.  Planner notes of team member Catrina Martin state that Spear said "we can say that timber harvest is less now than in 80's - so the picture is getting better."  ER 3668.

The decision of the Director of the U.S. Fish & Wildlife Service that the listing of the

goshawk as threatened or endangered was not warranted was published on June 29, 1998. 63 Fed. Reg. 35183. Reference to the planner notes of April 15, 1998 does not establish that the decision of the Director was made before the biological analysis.

C.     Biological Standard

The plaintiffs contend that the status review team tabled a decision on the definition of endangered until later in the process and never explained the process of how the agency reached this decision. The plaintiffs contend that the U.S. Fish & Wildlife Service employed scientific definitions of the terms "threatened" and "endangered" without defining what biological criteria to apply in making the decisions.

The U.S. Fish & Wildlife Service contends that the Endangered Species Act provides a definition of a "threatened" species, namely one that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

There is no evidence that the definition provided by the Endangered Species Act was inadequate or improperly applied.

D.     Peer Review

The plaintiffs contend that the U.S. Fish & Wildlife Service conducted a scientific peer review of its listing decision in accordance with agency policy, but this peer review was in many ways virtually worthless. The plaintiffs contend that the peer reviewers themselves noted many flaws in the peer review process.

The U.S. Fish & Wildlife Service contends that neither the Endangered Species nor the Administrative Procedures Acts require peer review. Since the agency was not required to conduct peer review at all, the U.S. Fish & Wildlife Service contends that there can be no legal basis for requiring the agency to use a particular process.

In Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519 (1978), the United States Supreme Court affirmed the basic tenet of administrative

law that administrative agencies should be free to fashion their own rules of procedure. The Court stated: "[T]his much is absolutely clear. Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties. Id. at 543 (internal quotations omitted).

The peer review process used by the U.S. Fish & Wildlife Service presents no constitutional constraints or extremely compelling circumstances.

## CONCLUSION

The administrative record in this case adequately supports the decision of the U.S. Fish & Wildlife Service that "listing the northern goshawk in the contiguous United States west of the 100th meridian is not warranted because available information does not indicate that this population is in danger of extinction or likely to become so in the foreseeable future." ER 9177.

The plaintiffs' motion for summary judgment (#51) is denied, and the defendants'

///

///

motion for summary judgment (#78) is granted. The court will enter judgment for the defendants.

DATED this 28th day of June, 2001.

_____/s/ Helen J. Frye_____
HELEN J. FRYE
United States District Judge